Harry J. Sanner v. Commissioner.
Sanner v. Commissioner
Docket No. 1376-68.
United States Tax Court
T.C. Memo 1969-84; 1969 Tax Ct. Memo LEXIS 211; 28 T.C.M. (CCH) 476; T.C.M. (RIA) 69084; April 30, 1969. Filed *211 Held, cost of acquiring and upkeep of uniforms required to be worn by California automobile driver's license examiner was personal expense and not deductible as ordinary and necessary business expense. Harry J. Sanner, pro se, 157 Crown Terrace #7, San Francisco, Calif. Nicholas G. Stucky, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: *212 Respondent determined a deficiency in petitioner's income tax for the year 1965 in the amount of $69.53. Petitioner has conceded several of the adjustments which gave rise to the deficiency. The only issue remaining for decision is whether petitioner is entitled to deduct the cost of a uniform he was required to wear while on his job and the cost of repair and upkeep of his uniforms during the year 1965. Findings of Fact The stipulated facts are found as stipulated. Petitioner is an unmarried individual whose residence was in San Francisco, Calif., at the time the petition in this case was filed. Petitioner filed a timely individual income tax return for the taxable year 1965 with the district director of internal revenue, San Francisco, Calif.
During the year 1965 and up to the date of trial petitioner was and is employed by the State of California, Department of Motor Vehicles, as a driver's license examiner. Under the regulations issued by the department, "All employees regularly assigned on a full or part-time basis to duties which require recommending issuance of drivers licenses shall wear the prescribed regulation dress while on duty in the driver licensing function. *213 " Such employees, as was petitioner, are required to equip themselves, at their own expense, with at least one complete outfit of regulation dress consisting of the coat, trousers, and accessories. Also, employees wearing regulation dress are responsible for keeping their clothing neat, clean, and properly pressed, with shoes shined and in good repair. There is no restriction against employees wearing the regulation dress while not on duty. The department regulations also included the following specifications for regulation dress: 2.205 Specifications for Regulation Dress (Slate Gray Suit) Effective as alternate specification through "wear-out" period ending June 30, 1968 for employees who have purchased this attire prior to issuance of the revised specifications described in Sec. 2.207: a. Two-piece business suit: (1) Color: The slate gray, Raeford Worsted Co. (Div. of Burlington Mills) No. 186 or its equivalent, shall be used. (2) Material: Not less than 11 oz. gabardine or elastique meeting the following specifications or equivalents: * * * NOTE: The above weight references are illustrative and are not deemed to prohibit lesser or greater weights in the same slate *214 gray color. (3) Coat: Single or double breasted. Two inside dress pockets. Two outside lower pockets (without flaps - not patch). (4) Trousers: With cuffs. Two hip pockets, without flaps (left hip pocket to button). (5) Accessories: (a) Belt: Black leather with chrome or silver half buckle. (b) Shoes: Black leather dress oxford with smooth finish to accept polishing. (c) Socks: Blue or black, solid color, no decoration. (d) Necktie: Four-in-hand, medium blue, Wembly #5N-81, 2Z-81, 3Z-81, or equivalent. (e) Shirt: White, long or short sleeves. See Sec. 2.207-4e. (f) Hat: Not required. If worn, the prescribed type will be a conservative snap brim hat matching the suit. * * * 2.207 Specifications for Regulation Dress (Charcoal Gray Suit) Effective for all purchases subsequent to issuance of this revision. Alternate specification in Sec. 2.205 will be cancelled at the end of the authorized "wear-out" period on June 30, 1968: 477 a. Two-piece business suit: (1) Fabric: Only the following listed fabrics from the specified sources are to be used: (a) 11-11 1/2 oz. gabardine, 55% polyester-45% wool. Metcalf Brothers & Co., charcoal gray #220-04, stock dyed. *215 (b) Equivalent fabrics, approved in advance by the Chief, Div. of Field Office Operation. (c) These fabrics must be imprinted with the "kaumagraph stamp" indicating the manufacturer and the material. (2) Coat: (a) Style: Single breasted conventional civilian coat style, straight front, semi-fitting. (b) Buttons on front: Three (3) matching bone. (c) Collar: 1inch notched lapel, 2 3/4inch wide at notch point with 5/8inch uncut buttonhole left lapel. (d) Sleeve Design: Plain coat style. No vents, no buttons. (e) Edges: 3/16inch stitched, seams standard. (f) Back Construction: Two-piece, plain with single vent. (g) Pockets: Outside Upper: Left, 3/4inch welt, 4 1/2inch wide on size 42. Outside Lower: Double piped, no flaps. Inside: Two (2) breast, self-cloth reinforced. (h) Body Lining: Half-lined, 140-count matching rayon satin with split swing yoke. (i) Sleeve Lining: Same as body. (j) Sleeve Shields: Self cloth. (k) Special Remarks: Construction to be of good #4 make. All edges and bottoms to be double stitched and stay taped. All seams to be turned in. Collar to be hand-felled on bottom (top also acceptable). Shoulder and sleeves to be hand-felled, *216 top and bottom. Cut away hand-basted canvas to be Army Type I, Hymo-Shape retentive light weight, cold water shrunk, or equal. Facings to be cut in one piece 5inch wide. Threads to be vat-dyed Size A. (3) Trousers: (a) Style: Five (5) pocket, plain front. No pleats. (b) Pockets: Front: 1/4 style. Top of pockets 1 3/4inch from side seam. Rear: Double piped without flap. Left to button. (c) Pocketing: 2.25 warped, sateen finished, pearl gray. (d) Belt Loops: 3/8inch wide, 1 1/8inch long. (e) Side Seam: Plain, flat. (f) Waistband: 7/8inch. (g) Lining: Snugtex with matching curtain. (h) Bottoms: 1 3/4inch cuffs. (i) Heel Stays: Cloth. (j) Fly: Zipper with French fly, hook-and-eye closure. (k) Special Remarks: Seven (7) belt loops. Top of loop to be turned over and tacked at waist. Bottom of loop to be sewed into waistband dropping 1/4inch and returned to top. All pockets to be securely bar-tacked. Width of bottom and knees on Size 32 to be 17inch and 20 1/2inch, respectively. (4) Accessories: (a) Belt: Black leather with chrome or silver half buckle. (b) Shoes: Black leather dress oxford with smooth finish to accept polishing. (c) Socks: Black, solid *217 color, no decoration. (d) Necktie: Four-in-hand, solid color, Regulation Postal Maroon, Wembly #10Z-51, 10GZ-51, 15Z-51, 15GZ-51, 30N-51 and 30GN-51; Superba Cravat #50, dark maroon; or equivalent approved in advance by the Division Chief. May be regular or clip-on style, but bow-tie not acceptable. Tie tack or small tie clasp will be worn to keep tie in place. Necktie to be worn at all times with regulation dress. (e) Shirt: White dress, full cut with tails; long or short-sleeved; medium spread collar; plain-broadcloth, oxford, or poplin fabric, preferably "permanent press". (f) Hat: Not required. If worn, the prescribed type will be a conservative snap brim hat matching the suit. * * * 2.225 Badges All Drivers License Examiners, male MVR II's and male employees in the Manager classes are issued identification badges. While on duty in the drivers license function, these employees shall wear this badge on the breast pocket of their coat, or on the left shirt pocket when not wearing a coat. 2.229 Duty Upon Resignation or Transfer The badge remains the property of the department and, upon resignation or transfer of an employee to another classification, must be turned *218 in to the office manager or district manager for forwarding to Field Office Headquarters. 478 Petitioner purchased a used slate gray suit in 1965 for $40, which he wore on duty, and also paid $50 for repair and upkeep of his uniform or uniforms during the year 1965, both of which amounts he deducted as miscellaneous business expense in arriving at taxable income reported on his 1965 return. Petitioner wore his uniform to and from his duty station and when stopping off at stores on his way home. He seldom wore it at other times when he was off duty. Petitioner owned two or three of the slate gray uniforms which he wore on duty during 1965. The trousers of the uniforms were subjected to heavier wear than usual sliding in and out of automobiles used in the driver's test and at times catching on broken springs or other defects. In the notice of deficiency sent to petitioner, respondent determined that the $40 paid for the suit and the $50 paid for repairs and upkeep of petitioner's uniforms were not deductible explaining: "The cost and expense of maintenance for clothing prescribed by your employer for work purposes is nondeductible personal expense because such clothing is *219 adaptable for general wear and can take the place of ordinary clothing." Ultimate Finding of Fact The regulation dress required to be worn by petitioner while on duty by his employer was and is adaptable to general and continued wear to the extent that it takes the place of ordinary clothing petitioner would otherwise wear while on duty and to the extent that it could take the place of ordinary clothing petitioner might wear while off duty. Opinion The issue here involves the interplay of two provisions of the Internal Revenue Code of 1954. Petitioner claims the cost of buying and maintaining the uniforms he was required to wear on duty are deductible under section 162(a)[1] as ordinary and necessary business expense of his business of being an employee. Respondent argues that these expenses are personal and therefore not deductible by virtue of section 262. [2]
*220 The line between an ordinary and necessary business expense and a personal expense is often difficult to draw, particularly in this area where an employee is required to wear a uniform or a particular type of clothing while on the job in lieu of his ordinary clothing, the cost of which would undoubtedly be personal and nondeductible. However, the "Commissioner and the Courts are in agreement that in order for the expenses of work clothes to be deductible the clothes must be of a type specifically required as a condition of employment, and they must not be adaptable to general usage as ordinary clothing." Donnelly v. Commissioner, 262 F. 2d 411 (C.A. 2, 1959), affirming 28 T.C. 1278. This Court has recognized this general rule at least since its decision in Marcus O. Benson 2 T.C. 12, affd. 146 F. 2d 191 (C.A. 9). See also Helen Krusko Harsaghy, 2 T.C. 484; Betsy Lusk Yeomans, 30 T.C. 757; Mim. 6463, 1950-1 C.B. 29. We think the rule as above stated is a reasonable means of delineating between *221 business and personal expenses in this area. The difficulty lies in applying the rule to the particular facts of each case, which must be done. As a result decisions in other cases are of little help in deciding subsequent cases. Each case must be decided on its own facts. In this case it is not disputed that petitioner is required by his employer to wear the uniforms involved. However, we have found as an ultimate fact from all the evidence presented that the uniforms are adaptable to general usage as ordinary clothing. This is dispositive of the issue in favor of respondent under the rule above stated. Petitioner wore one of the charcoal gray suits, the newer type required to be used after June 30, 1968, into Court and the Court was able to observe the suit and petitioner wearing it firsthand. Petitioner also brought to Court with him one of the older-type slate gray suits so the Court was able to examine this type suit as well. The parties also stipulated pictures of petitioner wearing both suits, both with and without the badge, which is simply slipped into the 479 upper outside pocket of the coat. Without the badge in place the clothing looked like any other ordinary *222 clothing made of gabardine or elastique. The Court could observe no reason why this clothing could not be worn on any occasion, had petitioner chosen to wear it, and indeed it is doubtful that it would be recognized as a uniform. The regulations refer to the suits as "two piece business suits" and they looked like ordinary business suits. In fact, petitioner testified that the department was trying to get away from the appearance of uniforms. Petitioner argues that he did not wear the regulation suits except on duty because he wanted to keep them in good condition for wear on duty and they were too hot; also that he did not like the color of the slate gray suit. Petitioner's desire to keep the uniforms in good shape is no different than the desire of any employee to keep the clothes he wears to work in good condition. The wear the uniforms take sliding in and out of automobiles is no different than the wear ordinary clothing would have taken if worn on the same job. It appears from the regulations that the weight of the material used in the suits could be varied, if petitioner wanted a cooler suit. And the fact that petitioner did not like the color of the slate gray suit does not *223 mean that it was not adaptable to general usage as ordinary clothing. While petitioner testified that other employees in the same job seldom wore their uniforms off duty, we have only petitioner's word for this, and we find no reason in the record why they could not or should not have done so had they chosen to do so. The most convincing evidence in support of the conclusion we reach is that petitioner looked too normal and too well in the suit he wore in court and the two suits he wore in the pictures received in evidence. This evidence was quite convincing that the regulation dress is adaptable to general usage as ordinary clothing, and the costs incurred in connection therewith are personal and nondeductible expenses. The mere fact that petitioner did not or chose not to wear the clothing off duty does not convert costs incurred in connection with it into a business expense. Decision will be entered for the respondent. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * ↩
2. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩